**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

UNITED STATES OF AMERICA,

v. 8:25-cr-00446 (AMN)

MACKENZIE MITCHELL

Defendant.

---

**APPEARANCES:** **OF COUNSEL:**

**UNITED STATES ATTORNEY FOR THE NORTHERN DISTRICT OF NEW YORK**
14 Durkee Street
Room 340
Plattsburgh, New York 12901
*Attorneys for the Government*

**JEFFREY C. STITT, ESQ.**
Assistant United States Attorney

**TALKIN, MUCCIGROSSO & ROBERTS**
100 Pearl Street
Suite 1809
New York, New York 10004
*Counsel for Defendant*

**SANFORD NOLAN TALKIN, ESQ.**

**Hon. Anne M. Nardacci, United States District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

On November 5, 2025, a grand jury returned an indictment charging defendant Mackenzie Mitchell ("Defendant") with one count of conspiracy to engage in transactions in property derived from specified unlawful activity, and three counts of engaging in such monetary transactions, in violation of 18 U.S.C. § 1957. *See* Dkt. No. 1. On September 8, 2026, authorities arrested Defendant on the United States side of the Akwesasne Mohawk Indian Reservation (the

"Reservation"). *See* Text Minute Entry dated 09/15/2026; Dkt. No. 13 at 1; Dkt. No. 23 at 3.[1] On September 15, 2026, United States Magistrate Judge Carla B. Freedman presided over a detention hearing and, after hearing argument from the United States (the "Government") and Defendant, adjourned the proceedings after determining that the Government's and Defendant's proffers gave conflicting accounts of the circumstances of Defendant's arrest, necessitating additional evidence. *See* Dkt. No. 19. On September 16, 2026, Magistrate Judge Mitchell J. Katz presided over a continued detention hearing and, after receiving testimonial evidence from an arresting officer, Acting Detective Sergeant Nathan Sawatis, conferring with Probation, and receiving confirmation from Defendant's wife Monica Mitchell that she is willing to act as a third-party custodian, ordered Defendant released on conditions, including that Ms. Mitchell serve as a third-party custodian. *See* Dkt. No. 20; Dkt. No. 14 ("Release Order"). On September 17, 2026, the Government appealed the Release Order to this Court and additionally requested that the Release Order be stayed pending appeal, Dkt. No. 13, which request this Court granted, Dkt. No. 15. The Government thereafter filed a memorandum of law in support of its motion for revocation, Dkt. No. 21 (the "Motion"), which Defendant opposed, Dkt. No. 23.[2]

For the reasons set forth below, the Court revokes the Release Order and orders Defendant detained pending trial.

---

[1] Citations referring to court documents utilize the pagination generated by CM/ECF, the Court's electronic filing system, and not the documents' internal pagination.

[2] Based on the parties' written submissions, "the Court does not find a hearing necessary and decides this bail appeal solely on the papers." *United States v. Henry*, No. 25 Mag. 23, 2025 WL 240902, at *1 n.2 (S.D.N.Y. Jan. 17, 2025) (citations omitted).

## II. BACKGROUND[3]

Defendant is a member of the Saint Regis Mohawk Tribe who resides on the Reservation. Dkt. No. 23 at 2-3. The Reservation includes territory on both sides of the United States-Canada border, and Defendant is a dual citizen of the United States and Canada. *Id.* Defendant worked from 2011 to 2023 as a detective with the Akwesasne Mohawk Indian Police Service ("AMPS"), Dkt. No. 21 at 2, but was suspended and later terminated in connection with his alleged offense conduct, Dkt. No. 23 at 2. He has been married to Monica Mitchell since 2018 and has three minor children. *Id.* at 2.

This case appears to have been under investigation since at least 2023. *Id.* at 3. Between 2021 and 2023, Defendant allegedly associated with a group that smuggled narcotics and currency from Canada into the United States. Dkt. No. 21 at 5. At the behest of that group, Defendant allegedly placed multiple bets in excess of $10,000 at the Akwesasne Mohawk Indian Casino, "at times while on duty as an AMPS officer." Dkt. No. 13 at 3.

Defendant learned that he was under investigation in July 2024, while crossing the United States-Canada border at a port of entry, after authorities sent him to a secondary interrogation with Homeland Security Investigations ("HSI") agents regarding the alleged conduct. Dkt. No. 21 at 2; Dkt. No. 23 at 3. He was suspended from his job as an AMPS officer the next day. Dkt. No. 23 at 3. Defendant was not charged until November 2025, when a grand jury indicted him on four charges. *See* Dkt. No. 1. In the interim, Defendant and his wife separated due in large part to the investigation, and Defendant resided with his parents on the Canadian side of the Reservation.

[3] The following background facts are taken from the parties' submissions and other records available to the Court.

Dkt. No. 19 at 11. Prior to Defendant's arrest, however, he returned to his family home in the United States and reunited with his wife and children. *Id.* at 11-12.

After learning of the HSI investigation into his conduct, Defendant continued to travel between the United States and Canadian sides of the Reservation, but he concedes that he began to avoid lawful ports of entry to avoid being "hassled every time" he encountered law enforcement. Dkt. No. 19 at 22; Dkt. No. 23 at 5. According to the Government, this change in his travel habits concerned Defendant's father to the point that he "reported to [HSI agents]" that he was concerned for Defendant's safety because Defendant was crossing the border by boat rather than through a port of entry. Dkt. No. 21 at 3.

On September 8, 2026, authorities observed Defendant drive his SUV from the United States side of the Reservation into Saint Regis, Quebec, where he picked up his three children from school. Dkt. No. 20 at 6-7. With his children in the vehicle, Defendant then drove about a mile back into the United States, where authorities in marked and unmarked vehicles awaited him. *Id.* at 8-9. Upon encountering the marked vehicles, Defendant "pulled over to the shoulder of the road, stopped briefly," and then drove onto a lawn and executed a U-turn, during which he drove over a curb, and then accelerated at a high rate of speed back toward the Canadian border. *Id.* at 9. Other police vehicles quickly intercepted Defendant's vehicle in the northbound lane of the road, "preventing [Defendant's] vehicle from proceeding northbound," and Detective Sawatis and other officers thereafter took Defendant into custody. *Id.* Detective Sawatis testified as to his belief that Defendant was attempting to flee into Canada where United States officers would not be able to follow him. *Id*. at 9-10.

## III. STANDARD OF REVIEW

"A district court reviews *de novo* a magistrate judge's order of pretrial release or detention." *United States v. Minnici*, 128 F. App'x 827, 828 n.1 (2d Cir. 2005) (citing, *inter alia*, *United States v. Leon*, 766 F.2d 77, 80 (2d Cir. 1985)). The release or detention of a defendant pending trial is governed by 18 U.S.C. § 3142. As relevant here, a court shall order detention if "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person or the community." 18 U.S.C. § 3142(e)(1).

When seeking pretrial detention, "[t]he government bears the burden of proving risk of flight by a preponderance of the evidence, but it must prove danger to the community by clear and convincing evidence." *United States v. Artis*, 607 F. App'x 95, 96 (2d Cir. 2015) (first citing 18 U.S.C. § 3142(g); and then citing *United States v. Sabhnani*, 493 F.3d 63, 74-75 (2d Cir. 2007)); *see also United States v. Jackson*, 823 F.2d 4, 5 (2d Cir. 1987) ("To order detention, the court must find by a preponderance of the evidence that the defendant presents a risk of flight, and, if it finds such risk, that no conditions could reasonably assure the defendant's presence at trial.") (citation omitted). Additionally, "[t]he rules of evidence do not apply in a detention hearing, *see* 18 U.S.C. § 3142(f), and the government may 'proceed by proffer alone.'" *United States v. Rivera-Banchs*, No. 20-2873, 2021 WL 4484908, at *2 (2d Cir. Oct. 1, 2021) (quoting *United States v. LaFontaine*, 210 F.3d 125, 130 (2d Cir. 2000)).

In determining whether the Government has satisfied its burden, a court considers the following factors: (1) "the nature and circumstances of the offense charged;" (2) "the weight of the evidence against the person;" (3) "the history and characteristics of the person;" and (4) "the

nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g)(1)-(4).

## IV. DISCUSSION

The Government argues that Defendant should be detained pending trial because he presents a significant risk of flight. Dkt. Nos. 13, 21. More specifically, the Government contends that the nature and circumstances of the alleged offenses weigh in favor of detention because Defendant faces a maximum sentence of ten years in prison, he is associated with a group suspected of smuggling narcotics and currency across the United States-Canada border, and he allegedly leveraged his position with AMPS to help the group avoid detection. Dkt. No. 21 at 5. The Government further argues that the weight of the evidence against Defendant is "overwhelming" and includes text messages regarding which bets to place with a co-conspirator who has since pled guilty to trafficking charges and who has admitted to using Defendant to obtain information about police activity, paying Defendant to smuggle drugs and currency through ports of entry, and providing Defendant with loans. *Id.* at 5-6. The Government also contends that Defendant's history as a police detective, his dual citizenship and familiarity with the United States-Canada border, the change in Defendant's behavior from crossing that border via ports of entry to avoiding ports of entry after learning of the investigation against him, and his attempt to flee when he was arrested, further indicate that Defendant poses a risk of flight. *Id.* at 3-4, 7.

### A. Applicability of the Statutory Presumption

As a threshold matter, the Court must address whether the statutory presumption of flight applies. *See* Dkt. No. 23 at 9, n.3. If the Court finds that there is probable cause to believe that the person has committed certain enumerated offenses, then the Court must presume that no condition or combination of conditions will reasonably assure the person's appearance. *See* 18

U.S.C. § 3142(e)(3). "[A] defendant bears a limited burden of production—not a burden of persuasion—to rebut that presumption by coming forward with evidence that he does not pose . . . a risk of flight." *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001). If the defendant satisfies his burden of production, the presumption favoring detention does not disappear but becomes one of the "factors to be weighed in deciding" whether he should be detained. *United States v. Martir*, 782 F.2d 1141, 1144 (2d Cir. 1986).

The Court agrees with Defendant that the statutory presumption of flight does not apply. None of the conditions precedent to such a presumption apply in Defendant's case. *See* 18 U.S.C. § 3142(e)(3). The law accordingly "favors pre-trial release" unless the Government carries its dual burden of proving "that [Defendant], if released, presents an actual risk of flight" and that "no condition or combination of conditions could be imposed on [Defendant] that would reasonably assure his presence in court." *Sabhnani*, 493 F.3d at 75 (internal citations omitted).

**B. Nature and Circumstances of the Offense**

As detailed above, Defendant is alleged to have engaged in a multiyear gambling conspiracy in connection with drug and currency smuggling within the Northern District of New York. *See supra* Section II.

Defendant points out that he is not accused of any of the offenses that are specifically enumerated in the relevant section of the Bail Reform Act. *See* Dkt. No. 23 at 9 (citing 18 U.S.C. § 3142(g)). That statute instructs the Court to consider whether the charged offenses, *inter alia*, "involve[] a . . . controlled substance . . . ." Defendant is charged with conspiring to engage in transactions in criminally-derived property and engaging in such monetary transactions. *See* Dkt. No. 21 at 5 (asserting that Defendant placed bets "knowing the proceeds were criminally derived"); Dkt. No. 1. Accordingly, conviction as to the charged offenses will require only that he "[knew]

that the funds were criminally derived," not that he knew specifically that he was "dealing with *drug proceeds*." *United States v. Reiss*, 186 F.3d 149, 154 (2d Cir. 1999) (comparing the elements of 18 U.S.C. § 1957(c) with the requirements of the sentencing enhancement established by U.S.S.G. § 2S1.2(b)(1)). Moreover, while the Government also asserts that Defendant "used his role as a detective" to assist drug smugglers, Dkt. No. 21 at 5, this conduct does not bear upon "the offense[s] charged," *see* 18 U.S.C. § 3142(g)(1). As such, the Court finds that the charged conduct is too attenuated from the underlying drug smuggling to support a finding that Defendant's charged offenses "involve[] . . . a controlled substance." *Id.* This does not, however, end the Court's inquiry into the nature and circumstances of Defendant's charged offenses. *See id.* (instructing the Court to consider the "nature and circumstances of the offense charged, *including* whether the offense is" among the enumerated offenses) (emphasis added).

The Government notes that Defendant faces a maximum term of ten years of imprisonment if convicted. Dkt. No. 13 at 1; *see also* 18 U.S.C. § 1957(b)(1). While the "prospect of a severe sentence can create a strong incentive for a defendant to flee and thereby avoid that sentence," *United States v. Zhang*, 55 F.4th 141, 151 (2d Cir. 2022) (citing *Sabhnani*, 493 F.3d at 76), the Government offers no indication that Defendant is subject to a mandatory minimum term of imprisonment, *see generally* Dkt. Nos. 13, 21; *see also* 18 U.S.C. § 1957(b)(1). Moreover, Defendant estimates that, should he receive credit for acceptance of responsibility, his Sentencing Guidelines range would be 27 to 33 months' imprisonment. Dkt. No. 23 at 2. The Government has not disputed this estimate, *see generally* Dkt. Nos. 13, 21, and regardless of whether this estimate is correct, the information available to the Court suggests that Defendant's likely Guideline range would be considerably less than five years.

Numerous courts have found that a mandatory minimum sentence of at least five years weighs in favor of pretrial detention. *See, e.g.*, *United States v. Blanco*, 570 F. App'x 76, 77 (2d Cir. 2014) (finding that mandatory sentence range of five to forty years supported pretrial detention); *United States v. Oberoi*, No. 8:25-CR-422 (MAD), 2026 WL 370118, at *7 (N.D.N.Y. Feb. 10, 2026) (reasoning that mandatory minimum term of five years, together with exposure to deportation, suggested a likelihood of flight); *United States v. Newton*, No. 18-CR-373-5 (RJS), 2020 WL 1862630, at *1 (S.D.N.Y. Apr. 13, 2020) (Sullivan, J.) (finding that mandatory minimum sentence of five years and guidelines range of eighty-seven to 108 months of imprisonment indicated risk of flight). The Court is unaware of authority finding shorter potential sentences sufficient to establish a risk of flight. *See United States v. Terrance*, No. 8:24-CR-456 (MAD), 2025 WL 782340, at *7 (N.D.N.Y. Jan. 10, 2025) (reasoning that the Government's reliance "solely on the seriousness of Defendant's crime and his potential three-year sentence" was insufficient to establish flight risk, but finding sufficient evidence of flight risk based on other of defendant's attributes). The Court agrees with Defendant that his relatively low estimated Guidelines range does not weigh in favor of pretrial detention.

**C. Weight of the Evidence**

"The presumption of innocence is a trial right, and a district court does not violate that presumption by considering the strength or weakness of the evidence to determine whether pretrial detention is appropriate." *Zhang*, 55 F.4th at 144. Defendant's charged offenses require "a showing *first*, that [D]efendant knowingly engaged in a monetary transaction; *second*, that [D]efendant knew the property was criminally derived; and *third*, that the property was of a value greater than ten thousand dollars," *United States v. 674,739.480211 USDT of Tether cryptocurrency*, No. 5:25-CV-01040 (BKS/PJE), 2026 WL 592743, at *9 (N.D.N.Y. Mar. 3, 2026)

(Sannes, C.J.) (internal quotation marks omitted), and separately that he conspired with at least one other person with the specific intent to do so, *U.S. v. Garcia*, 587 F.3d 509, 515 (2d Cir. 2009) (citing *United States v. Huezo*, 546 F.3d 174, 180 (2d Cir. 2008)).

The Government represents to the Court that Defendant's gambling activity is "corroborated by text messages obtained from [Defendant's] iCloud accounts via court ordered search warrants," including communications in which Defendant and an alleged co-conspirator discuss "what bets to place," and which reflect the co-conspirator permitting Defendant to "keep portions of the winnings." Dkt. No. 21 at 5-6. The Government further represents that the co-conspirator has admitted to, *inter alia*, "providing loans to [D]efendant." *Id.* at 6. The Government's proffer indicates that Defendant placed several corresponding bets greater than ten thousand dollars in connection with these messages. *Id.* Defendant in response argues that the Government's proffer fails to establish "whether the alleged bets were placed with funds derived from criminal activity or whether [Defendant] was aware of this fact." Dkt. No. 23 at 11. But the fact that Defendant allegedly needed his co-conspirator's permission to keep portions of his gambling winnings, together with the co-conspirator's admission that he provided Defendant with loans, indicates that Defendant used funds from his co-conspirator to gamble. Dkt. No. 21 at 6. Defendant's alleged familiarity with the co-conspirator's smuggling activity, as indicated by the co-conspirator's admission that he "used [D]efendant for information about police activity" in furtherance of his smuggling further suggests Defendant knew these funds were criminally derived. *Id.* Thus, contrary to Defendant's position, the Government's proffer presents a strong case against Defendant as to each of the elements of his charged offenses..

The Court nevertheless also notes that the weight of the evidence generally suggests an "elevated risk of flight" because it indicates a correspondingly "elevated risk of conviction."

*Zhang*, 55 F.4th at 151; *see also United States v. Berkun*, 392 F. App'x 901, 903 (2d Cir. 2010) ("Because the evidence of guilt is strong, it provides [defendant] with an incentive to flee.") (citing *United States v. Millan*, 4 F.3d 1038, 1046 (2d Cir. 1993)). In light of Defendant's relatively low estimated Guidelines sentencing range, *see* Section III.B*, supra*, the effect of the strong evidence against Defendant contributes only slightly to Defendant's incentive to flee.

The Court accordingly finds that the second factor weakly supports a risk of flight.

**D. History and Characteristics of the Defendant**

As detailed above, Defendant worked for nearly fifteen years as a police officer on the Reservation. *See* Section II, *supra*. The Government suggests that Defendant's law enforcement experience informed him of the "susceptibilities of the geography" of that region, which he might leverage to escape across the border. Dkt. No. 21 at 2. Indeed, Defendant has crossed the United States-Canada border outside of ports of entry in the years after he became aware of the investigation against him, frequently enough to worry his father. *Id.* at 3.

Defendant urges in response that his police experience has also made him aware of the possibility of arrest and extradition, and the consequences thereof, should he flee to Canada, and he accordingly would not run the risk of those consequences. Dkt. No. 23 at 4, n.2. Ostensibly, his police experience might have also given Defendant insight into how a fugitive might avoid arrest and extradition. Regardless, the Court is unpersuaded by the argument that Defendant's status as a former police officer means that he knows better than to run afoul of the law; the strength of the evidence discussed in Section III.C, *supra*, belies this logic. The Court further notes that the Government's proffer suggests that he is willing to abuse the public trust in furtherance of his own interests. The Government asserts that Defendant used his law enforcement position to assist his co-conspirators in their smuggling activity for years. Dkt. No. 21 at 5. Accordingly,

Defendant's police experience weighs against extending him a further degree of public trust by releasing him pending trial.

Additionally, Defendant possesses Canadian citizenship and has a demonstrated ability and willingness to cross the border outside of established ports of entry. *Id.* at 2-3. Foreign citizenship and frequent international travel suggest an increased likelihood of flight. *See, e.g.*, *United States v. Kirkaldy*, 181 F.3d 83 (2d Cir. 1999) (finding that defendant's Jamaican citizenship and residence in Canada suggested risk of flight); *United States v. Fishenko*, No. 12 CR 626 SJ, 2013 WL 3934174 (E.D.N.Y. July 30, 2013), *aff'd* (Sept. 23, 2013) (finding that defendant's dual Russian and United States citizenship and frequent travel weighed in favor of detention). Defendant points out that he did not disappear into Canada even after he learned of the investigation against him. Dkt. No. 23 at 13. He does, however, concede that he actively avoided encountering law enforcement during that period. *Id.* at 5. That Defendant sought to avoid law enforcement after learning that he was under investigation is troubling and suggests that he might take additional steps to avoid prosecution now that he has been charged. Defendant's ability to travel to Canada therefore weighs in favor of pretrial detention.

Defendant's wife and three children reside on the United States side of the Reservation, and he urges that his familial connections give him a strong reason to remain in the United States and comply with the conditions of his release. Dkt. No. 23 at 2. The Government notes that his family also have ties to Canada and suggests that they might relocate to the Canadian side of the border with Defendant should he choose to abscond. Dkt. No. 21 at 4. Defendant disputes this conclusion, pointing out that he and his wife separated due to the investigation into his alleged conduct, and that he has worked extensively to reconcile and maintain his relationship with her over the months leading up to his arrest. Dkt. No. 23 at 4. Ms. Mitchell, having previously

"thrown [Defendant] out of the house in large part because of this case," has committed to ensuring Defendant's compliance with the conditions of his release and ensuring his attendance at all proceedings. *Id.* at 12. The Court accordingly declines the Government's invitation to speculate that Ms. Mitchell, an uncharged third party who is not alleged to have had any involvement in the charged offenses, would breach her commitment to the Court and instead facilitate Defendant's flight from the United States.

The circumstances of Defendant's arrest, however, strongly suggest that Defendant poses a flight risk. Detective Sawatis's testimony indicated that after Defendant encountered a law enforcement blockade waiting to arrest him, he attempted to flee back across the border to Cananda, and that he stopped only after officers blocked his way. Dkt. No. 20 at 8-9. The fact that Defendant attempted to flee at all counsels strongly in favor of pretrial detention. *See United States v. Cintron*, No. 1:25-CR-282 (AMN), 2026 WL 2494821, at *6 (N.D.N.Y. Aug. 25, 2026) ("There is no need to guess what might happen when Defendant is approached by law enforcement. It has already happened—and Defendant fled.").

* * *

In sum, the Government has carried its burden of proving by a preponderance of the evidence that Defendant poses a flight risk that cannot be overcome by any condition of release. Defendant is uniquely situated to flee into the Canadian side of the Reservation and beyond, and he has demonstrated that he is willing to try. As such, the Court concludes that "no condition or combination of conditions will reasonably assure [Defendant's] appearance." 18 U.S.C. § 3142(e)(1). Accordingly, the Court grants the Government's Motion and orders Defendant detained pending resolution of this action.

## V. CONCLUSION

Accordingly, the Court hereby

**ORDERS** that the Government's Motion to revoke the Release Order, Dkt. No. 21, is **GRANTED**; and the Court further

**ORDERS** that Defendant is remanded to the custody of the United States Marshals Service pending resolution of this case; and the Court further

**ORDERS** that the Clerk serve a copy of this Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: November 3, 2026
Albany, New York

Anne M. Nardacci
U.S. District Judge